UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

NEW LENOX INDUSTRIES, INC., a Florida
corporation,

                Plaintiff,

v.                                       Case No.  5:06-cv-184-Oc-10GRJ

CHARLES H. FENTON, an individual,
AIRBELT SYSTEMS, LLC.,

                Defendants.
_____/

## REPORT AND RECOMMENDATION[1]

      Pending before the Court is Defendants' Motion To Dismiss, Or Alternatively, For A More Definite Statement. (Doc. 5.) Plaintiff has filed a response in opposition. (Doc. 15.) On August 30, 2006 the Court granted Plaintiff's request to engage in limited jurisdictional discovery (Doc. 23)[2] before the Court ruled upon Defendant's challenge to personal jurisdiction and further authorized the parties to file supplemental memoranda after completion of the limited jurisdictional discovery. Pursuant to the Court's invitation, the parties filed supplemental memoranda (Docs. 44 & 45) and, accordingly, the matter is now ripe for review.

---

[1]Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation.  Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

[2]  The Court also issued a further order on October 30, 2006 authorizing the Plaintiff to issue subpoenas to the IRS to obtain selected documents. (Doc. 43.)

For the following reasons, Defendants' Motion To Dismiss, Or Alternatively For A More Definite Statement is due to be **DENIED** in all respects other than as to Count V of the Complaint, which is due to be dismissed.

## I. BACKGROUND AND FACTS

This case concerns a claim by Plaintiff, New Lenox Industries ("NLI") against Defendant, Charles Fenton ("Fenton") and Defendant Airbelt Systems, LLC ("Airbelt"), alleging that Fenton, acting through, AirBelt, disclosed and licensed NLI's confidential and proprietary information to third parties concerning NLI's cold gas airbag inflation mechanism technology. Plaintiff's complaint purports to allege causes of action for breach of a confidentiality agreement, fraud, misappropriation of trade secrets, civil theft, unjust enrichment and wrongful assignment of patents.

A review of the allegations in the complaint, and of the declarations and depositions filed of record, disclose the following details. NLI is a Florida corporation that develops and owns technology, which inflates airbags used in vehicles.[3] Fenton, a Utah resident,[4] worked as an airbag industry consultant and later formed AirBelt, a closely held California limited liability company, with Lawrence Schultz ("Schultz").[5] Airbelt developed, marketed and patented its own air bag technology.[6]

According to the allegations in NLI's Complaint, a third party, which was considering investing in NLI, retained Fenton to evaluate and audit NLI's airbag

---

[3] Doc. 2, Complaint, ¶ 2.

[4] Doc. 8, Declaration of Charles H. Fenton, ¶1.

[5] Doc 45, Deposition of Lawrence Schultz, pp. 27-28.

[6] *Id.* at pp. 5, 28-29, 34.

2

technology at NLI's Dunellon, Florida office.[7] Before the evaluation, on January 24, 1995, Fenton entered into a confidentiality agreement (the "Agreement") with NLI agreeing not to use or disclose NLI's confidential information for three years.[8] According to NLI, at that time, NLI's airbag technology was not known in the airbag or automotive industries and no one else had held or had applied for a patent covering the technology.[9] NLI alleges that it was the first company to develop a mechanism to properly inflate a cold gas airbag - the micro-detonator.[10]

During the evaluation of NLI's technology, NLI disclosed to Fenton its micro-detonator drawings and technology. Additionally, NLI disclosed to Fenton its newer technology that created a less explosive charge and enhanced the directional shock wave of an airbag.[11] In a letter dated February 12, 1995, NLI emphasized to Fenton the importance of keeping the disclosed proprietary information confidential.[12]

Following the evaluation, Fenton wrote a letter on January 31, 1995 to NLI stating that NLI needed 24 to 30 months of development before it was ready to market its airbag technology.[13] Fenton also sent a negative report regarding NLI's airbag

---

[7] Complaint, ¶ 3.

[8] *Id*. at ¶¶ 4-5.

[9] *Id*. at ¶ 5.

[10] *Id*. at ¶ 9.

[11] *Id*. at ¶ 10.

[12] *Id*. at ¶ 11.

[13] *Id*. at ¶ 6.

technology to the third party who had retained him, and after receiving the negative report, the third party did not invest in NLI.[14]

Thereafter, Fenton and Schultz created the company AirBelt in October of 1995, and after its creation Fenton served as President.[15] Airbelt developed and patented a spool valve to control the explosive airflow in the cold gas airbag inflation system.[16] To market the spool valve technology on behalf of Airbelt, Fenton attended two airbag technology conferences in Florida. There, Fenton passed out literature detailing Airbelt's spool valve technology, and eventually, Airbelt entered into a license with one of the manufacturers Fenton had contacted at the Florida conferences.[17]

Plaintiff's theory of the case is that Fenton, in the guise of an industry consultant, stole NLI's proprietary technology. Then, according to Plaintiff, Fenton formed Airbelt for the purpose of developing and patenting similar technology based on the stolen information, and then he marketed the technology to third parties.

In their Motion to Dismiss, Defendants argue that Plaintiff's Complaint should be dismissed for lack of personal jurisdiction over the Defendants. Defendants also allege that each cause of action in Plaintiff's Complaint fails to state a claim upon which relief may be granted. Specifically, Defendants argue that: (1) the claim for breach of contract is barred by the statute of limitations; (2) the claim for fraud is barred by the economic loss rule and/or preempted by Florida's Uniform Trade Secrets Act ("FUTSA"); (3) the

---

[14] *Id.*

[15] Doc. 45, Deposition of Charles H. Fenton, pp. 22-23, 27.

[16] *Id.* at 29-30.

[17] *Id.* at 60-73, 86-87.

claim for trade secret misappropriation is barred by the economic loss rule and/or fails to allege what Plaintiff sought to protect and what Defendants are accused of misappropriating; (4) the claim for civil theft does not apply to trade secret misappropriation; (5) the claim for unjust enrichment is preempted by FUTSA; and (5) the assignment of patents claim is not recognized in Florida and/or lacks an equitable remedy.

## II.  STANDARD OF REVIEW

In determining the propriety of granting a motion to dismiss, a court must accept all the factual allegations in the complaint as true and evaluate the inferences derived from the facts in the light most favorable to the plaintiff.[18] In passing on a motion to dismiss under Rule 12(b)(6), the Court is mindful that "[d]ismissal of a claim on the basis of barebones pleadings is a precarious disposition with a high mortality rate."[19] A complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[20] The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low.[21]

---

[18] *See e.g.*, Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).

[19] Int'l Erectors, Inc. v. Wilhoit Steel Erectors Rental Serv., 400 F.2d 465, 471 (5th Cir. 1968).

[20] Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02 (1957).  *See also* Cook & Nichol, Inc. v. The Plimsoll Club, 451 F.2d 505, 506 (5th Cir. 1971)("a motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would not be entitled to recover under any state of facts which could be proved in support of his claim").

[21] *See* Ancata v. Prison Health Servs., 769 F.2d 700, 703 (11th Cir. 1985)(citation omitted).

## III.  DISCUSSION

### A.  Personal Jurisdiction

A court must address a challenge to its exercise of personal jurisdiction before looking at the other claims in a motion to dismiss.[22] The plaintiff has the burden of initially establishing a *prima facie* case of personal jurisdiction over a nonresident defendant. "A prima facie case is established if the plaintiff presents sufficient evidence to defeat a motion for a directed verdict."[23] The district court accepts the facts alleged by the plaintiff as true as long as they do not conflict with the defendant's affidavits.[24] Where the pleadings and supporting documents are in conflict, the court must construe all reasonable inferences in favor of the plaintiff. However, the plaintiff must provide additional support for his claim of personal jurisdiction where the defendant has made a strong argument against such jurisdiction.[25]

In the instant case, Plaintiff has made the requisite *prima facie* showing in the Complaint, and Plaintiff has offered additional support through Plaintiff's Opposition to Motion to Dismiss (Docs. 15 and 45) and accompanying depositions and declarations.

A court must engage in a two-part analysis to determine whether it has personal jurisdiction over a nonresident defendant.[26] First, the court must determine if jurisdiction

---

[22] Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990).

[23] Cable/Home Communication Corp. v. Network Prods., Inc., 902 F.2d 829, 855 (11th Cir. 1990) (quoting Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988)).

[24] *Id.*

[25] Wallack v. Worldwide Mach. Sales, Inc., 278 F. Supp. 2d 1358, 1364 (M.D. Fla. 2003).

[26] Horizon Aggressive Growth v. Rothstein-Kass, 421 F.3d 1162, 1166 (11th Cir. 2005).

6

can be obtained over the defendants under Florida's long-arm statute. Second, the court must then decide whether the nonresident defendants have sufficient "minimum contacts" with Florida to meet the constitutional requirements under the Due Process Clause of the Fourteenth Amendment.[27] Even if jurisdiction is found under Florida's long-arm statute, a separate review of the facts must be undertaken by the Court to determine if the constitutional test is met.[28]

### 1. Florida's Long-Arm Statute

Because Florida law dictates the reach of the long-arm statute, this Court must interpret it in the same way that the Florida Supreme Court would.[29] Therefore, this Court must strictly construe the statute,[30] and the burden of proving the facts which make the statute applicable to the Defendants is on the Plaintiff.[31]

Florida's long arm statute, Florida Statute § 48.193(1), provides in relevant part:

[a]ny person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from doing any of the following acts:

(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

---

[27] Id.

[28] Cable/Home Communication, 902 F.2d at 856 (quoting Venetian Salami Co. v. Parthenais, 554 So.2d 499, 500 (Fla. 1989)).

[29] Horizon Aggressive Growth, 421 F.3d at 1167.

[30] Madara, 916 F.2d at 1514.

[31] Restorative Prods., Inc. v. Mmar Med. Group, Inc., No. 94-1920 CIV-T-17A, 1995 U.S. Dist. LEXIS 18695, at *5 (M.D. Fla. Oct. 18, 1995); Bloom v. A. H. Pond Co., Inc., 519 F. Supp. 1162, 1168 (S.D. Fla. 1981).

(b) Committing a tortious act within this state...

       \*     \*     \*

(g) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state...[32]

To meet the Florida long-arm, the Plaintiff must demonstrate that the "connexity" requirement has been met--a higher standard than that which is required by most other jurisdictions' long-arm statutes. To satisfy this requirement, "the cause of action [must have] some [ ] connection to a specific act committed in Florida."[33]

Plaintiffs claim they have satisfied Florida's long arm statute because Defendants "conducted and engaged in business in this state, have committed a tort within this state, and have breached contractual duties to NLI in this state."[34] To establish that a defendant engaged in a general course of business activity in Florida, the activities the defendant carried out "must be considered collectively and show a general course of business activity in the State for a pecuniary benefit."[35] Plaintiff asserts that Defendants engaged in a regular course of business activity in Florida as evidenced by the following four events: (1) Fenton evaluated NLI's technology in NLI's Dunnellon, Florida office; (2) Fenton communicated with NLI regarding a prospective position at NLI; (3) Fenton on behalf of Airbelt attended two trade shows in Florida and; (4) at one of the trade shows, Fenton, through Airbelt, secured a license to sell Airbelt's technology.

---

[32] Fla. Stat. § 48.193 (1995).

[33] Bloom, 519 F. Supp. at 1168.

[34] Complaint, Doc. 2, ¶ 16.

[35] Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 627 (11th Cir. 1996) (quoting Dinsmore v. Martin Blumenthal Associates, Inc. 314 So.2d 561, 564 (Fla. 1975)).

These acts do not establish that either Defendant engaged in a general course of business activity in Florida. During his first trip to Florida, Fenton performed due diligence as a consultant at the behest of a third party. His own consulting company did not direct business in Florida. Moreover, merely discussing a discrete offer for employment is not sufficient to establish that Fenton was conducting a general course of business in Florida. Additionally, there is no evidence that Defendants purposely directed their sales efforts to Florida by attending two airbag industry trade shows and fortuitously securing a client at one of the shows.[36]

With respect to whether Plaintiffs can establish the tortious activity prong of Florida's long arm statute, "[t]he plaintiff must demonstrate that the nonresident defendant 'committed a substantial aspect of the alleged tort in Florida' by establishing that the activities in Florida were essential to the success of the tort."[37] The tortious act does not have to take place in Florida, but "a substantial aspect" would include "'the situation in which a foreign tortious act causes injury within the forum.'"[38]

Plaintiffs allege that both Fenton and Airbelt committed a tort in Florida based upon the fact that Fenton traveled to Florida for the purpose of misappropriating NLI's confidential and proprietary information and then formed Airbelt to patent and market the stolen technology, which Defendants accomplished during two airbag industry trade shows in Florida, essentially perpetuating the tort.

---

[36] *Cf*. Geodetic Services Inc. v. Metronoer AS, 2000 WL 1027222, *5 (M.D. Fla. 2000).

[37] Cable/Home Communication, 902 F.2d at 857 (citing Williams Elec. Co., Inc. v. Honeywell, Inc., 854 F.2d 389, 394 (11th Cir. 1988)).

[38] *Id*. at 857 (quoting Rebozo v. Wash. Post Co., 515 F.2d 1208,1212 (5th Cir. 1975)).

Defendants suggest that they did not commit a tort in Florida because Airbelt's technologies that were sold are unrelated to NLI's technolgies. According to Airbelt, their "spool valve" technology restricts the airflow unlike NLI's technology which initiates the airflow. Moreover, relying upon *Doe v. Thompson*,[39] Defendants maintain that Fenton cannot be forced to defend a suit against him personally based on one meeting in Florida as a representative of a third party.

At this stage of the proceedings, the Court does not need to determine whether Airbelts' technologies are the same as NLI's or are derived from NLI's technologies because for purposes of determining whether Plaintiff has satisfied Florida's long arm statute the Court must accept the allegations in the Complaint as true and must evaluate the inferences derived from the facts in the light most favorable to the Plaintiff. Simply stated, the Plaintiff has alleged that Fenton stole NLI's technology while in Florida performing his due diligence for a third party and then used the confidential technology to market a similar air bag product through Airbelt during at least two trade show visits to Florida.

Moreover, Defendants' reliance on *Doe* is misplaced because Fenton is alleged to have performed due diligence in his capacity as an independent contractor, conducting his own consulting on behalf of the third party, and not as an officer or

---

[39] 620 So.2d 1004 (Fla. 1993). In <u>Doe v. Thompson</u>, the Florida Supreme Court held that under the corporate shield doctrine "acts of [a] corporate employee performed in [his] corporate capacity do not form the basis for jurisdiction over a corporate employee in his individual capacity." The Florida Supreme Court affirmed the rationale for the corporate shield doctrine as stated by the New Hampshire Supreme Court in <u>Estabrook v. Wetmore</u> which found that "it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer."

employee of a third party. Accordingly, the Court concludes that Plaintiff sufficiently has established under Florida's tortious activity section of the long arm statute that both Defendants committed a substantial aspect of a tort in Florida.

In addition to satisfying the tortious activity prong of Florida's long arm statute, Plaintiffs have also established that Defendant Fenton falls within the reach of subsection (g) of the Florida long-arm statute, which recognizes personal jurisdiction over a defendant who breaches a contractual obligation existing in Florida. During Fenton's first trip to Florida to perform due diligence, Fenton signed a nondisclosure agreement in which he agreed to keep NLI's airbag technology confidential. Plaintiffs allege that Fenton breached this agreement, an agreement executed in Florida to protect NLI, a Florida corporation, from damage as a result of the unauthorized disclosure of its technology. Accordingly, as to Defendant Fenton, the Plaintiffs have also established that the claimed conduct by the Defendant falls within the purview of section (g) of Florida's long arm statute.

## 2.  Due Process

Having determined that the Plaintiffs have established that the claims against the Defendants fall within the purview of Florida's long-arm statute, the Court must next determine whether each individual defendant has sufficient minimum contacts with the forum to satisfy the due process requirements of the Fourteenth Amendment of the Constitution so that the exercise of personal jurisdiction does not offend "traditional notions of fair place and substantial justice."[40]

---

[40] Int'l Shoe Co. v. Washington, 356 U.S. 310, 326 (1945).

The Eleventh Circuit utilizes a three-part test to determine whether there are sufficient minimum contacts:

> [f]irst, the contacts must be related to the plaintiff's cause of action . . . Second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . . Third, the defendant's contacts with the forum must be such that the defendant should reasonably anticipate being haled into court there.[41]

Minimum contacts may support two types of personal jurisdiction, general jurisdiction and specific jurisdiction. Specific jurisdiction is involved where a party's contacts with the forum relate to the cause of action. General jurisdiction, on the other hand, is where a party's contacts are unrelated to the litigation, but nonetheless are "continuous and systematic," such as owning property, running a business, or maintaining a bank account.[42] In the instance case, the minimum contacts alleged by Plaintiff are directed to the cause of action and therefore relate to specific jurisdiction. As such the first part of the test - that the contacts are related to the cause of action - is established.

With regard to the second and third parts of the test, Defendants argue that each part of the test cannot be met because of the Defendants' lack of contacts with the state of Florida. Defendants highlight that they do not do business in Florida, have no office, agents, employees or property in Florida and do not advertise in Florida.

Plaintiff counters that Defendant Fenton's contacts with Florida include his execution of the confidentiality agreement with NLI in Dunnellon, Florida, a letter sent to

---

[41] Posner v. Essex Ins. Co., 178 F.3d 1209, 1220 (11th Cir. 1999) (quoting Vermeulen v. Renault, U.S.A., Inc., 985 F.2d 1534, 1546 (11th Cir. 1993)).

[42] Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984) (citing Perkins v. Benguet Consol, Mining Co., 342 U.S. 437, 438, 445 (1952)).

Florida regarding NLI's technology, subsequent communication with NLI about employment opportunities and two visits to Florida to attend trade shows. Taken together, Plaintiff maintains that Fenton's contacts constitute purposeful availment.[43] Furthermore, Plaintiff argues that Defendant Airbelt is the alter ego of Fenton and thus meets the requisite for sufficient contacts through Fenton.

A number of courts have recognized that where a defendant's tortious conduct is intentionally and purposefully directed at a resident of the forum, the minimum contacts requirement is met, and the defendant should anticipate being haled into court in that forum.[44] In this case, Plaintiff alleges that Defendants committed one or more intentional torts and breached a contract against Plaintiff who was injured in Florida.

Accordingly, under the three-part test enumerated above, because Defendants' contacts with Florida relate to Plaintiff's cause of action and the Defendants purposefully directed their conduct toward a Florida resident, the Defendants reasonably should have anticipated being haled into court here. The Court therefore concludes that the assertion of personal jurisdiction over the Defendants passes constitutional muster.

---

[43] Sea-Lift, Inc. v. Refinadora Costarricense, 792 F.2d 989, 994 (11th Cir. 1986) (finding a foreign defendant's direct solicitation of business from a forum resident as "purposeful availment").

[44] Calder v. Jones, 465 U.S. 783, 790 (1984); Posner, 178 F.3d at 122; Silver v. Levinson, 648 So.2d 240, 243-44 (Fla. Dist. Ct. App. 1995); Allerton v. State Dep't of Insurance, 635 So.2d 36, 40 (Fla. Dist. Ct. App. 1994); Int'l Harvester Co. v. C. Rex Mann, 460 So.2d 580, 581-82 (Fla. Dist. Ct. App. 1984) ("[T]he commission of a tort within Florida by a nonresident is a sufficient "minimum contact" with Florida to justify personal jurisdiction in light of the federal constitution.") (citing Godfrey v. Neumann, 373 So.2d 920, 922 (Fla. 1979)).

**B.  Service of Process on Airbelt**

In addition to challenging personal jurisdiction, Defendant Airbelt also argues that the Court does not have personal jurisdiction over it because it was not properly served with process in this case.

Service of process in an action in federal court is detailed in Rule 4 of the Federal Rules of Civil Procedure. Pursuant to Rule 4(h)(1) service of process on a corporation may be perfected in the manner prescribed by state law or by serving an "officer, a managing or general agent, or any other agent authorized by law to receive service of process ... "

In its original motion Airbelt alleged that service of process was ineffective because the summons and complaint was served upon an employee of a private mailbox location, where Larry Schultz maintained a private mailbox, rather than being served upon Schultz personally as Airbelt's registered agent.

In addition to attempting to serve Schultz, Plaintiff also served Charles Fenton, as the President of Airbelt. Airbelt challenged this service as well, contending that Fenton is not an officer of Airbelt. However, Fenton subsequently filed an Amended Declaration, admitting that Airbelt was formed as an "LLC" in California and that he is the President and a member of the LLC.[45] Consequently, any issue as to whether service of process was effective on Airbelt has been remedied. Because Fenton is an officer of Airbelt service upon him on behalf of Airbelt is in compliance with the requirements of Rule 4 Fed. R. Civ. P. and is in compliance with Florida Statute §

---

[45] Doc. 30, ¶6.

14

48.081(1). Accordingly, Defendant Airbelt's motion to dismiss for improper service of process is due to be denied.

## C.  Failure To State A Cause Of Action

### 1.  Breach of Contract Against Defendant Fenton

The elements of a breach of contract action are: (1) a valid contract, (2) a material breach, and (3) damages.[46] Defendants do not dispute that the Complaint alleges these requisite elements. Instead, Defendants argue that the statute of limitations has run on Plaintiff's breach of contract claim based upon the fact that the nondisclosure agreement executed by Fenton prohibited him from disclosing NLI's proprietary information for a period of three years.

NLI alleges in its Complaint that it disclosed the confidential information to Fenton on or around January 24, 1995.[47] Consequently, Fenton argues that the information remained confidential only until January 24, 1998. Thus, according to Fenton, Plaintiff was required to file the lawsuit no later than January 24, 2003, five years[48] after the last possible date Fenton was prohibited from disclosing the confidential information.

The central problem with Defendant's argument at this point is that the Plaintiff has not alleged in the Complaint when Fenton disclosed the confidential information or when the Plaintiff was first damaged by the alleged breach. It is axiomatic that under

---

[46] Beck v. Lazard Freres & Co., LLC, 175 F.3d 913, 914 (11th Cir. 1999).

[47] Doc. 2, ¶5.

[48] The statute of limitations under Florida law for a breach of contract action is five years. Fla. Stat. §95.11(2)(b).

Florida law, a cause of action accrues, for statute of limitations purposes "when the last element constituting the cause of action occurs."[49] Consequently, if the alleged damage to Plaintiff occurred within the five year period preceding April 28, 2006 (the date the complaint was filed in state court) the action would not be time barred. Thus, the trigger date for the five year statute of limitations is not necessarily the last day of the three year nondisclosure period but rather the date when Plaintiff allegedly suffered damage as a result of the breach, which would be the date that the last element of the cause of action occurred.

In the instant case because it is not evident from the Complaint when Fenton disclosed the proprietary information or the date that Plaintiff contends it was damaged as a result of the alleged breach, the Court cannot conclude that the claim is time-barred.[50] The guiding rule is that a complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[51] Accordingly, because Defendant cannot prove beyond doubt that Plaintiff can prove no set of facts to support a claim for breach of contract against Fenton, Defendant's motion to dismiss Count I of the Complaint is due to be denied.

---

[49] Fla. Stat. §95.031(1).

[50] Additionally, Plaintiff argues that there are sufficient grounds to support the argument that the statute of limitations was tolled. The determination of whether there are valid reasons for tolling under Fla. Stat. §95.051(1)(a) or for tolling of the statute of limitations under equitable principles is not appropriate on a motion to dismiss. By necessity that determination would require the Court to go beyond the four corners of the Complaint.

[51] Conley, 355 U.S. at 45-46.

### 2.  Fraud In The Inducement Claim

Defendants request the Court to dismiss Plaintiff's claim for fraud in the inducement in count II of the Complaint, contending that it is: (1) barred by the economic loss rule, and (2) preempted by the Florida Uniform Trade Secrets Act. ("FUTSA".)[52] The Court will address each of these arguments in turn.

With regard to the economic loss rule, Defendants argue that Plaintiff cannot bring a tort action where the only damages suffered are the "economic losses" that flow from a contractual breach.[53] Defendants contend that Plaintiff's "allegation that 'Fenton represented to Barnes that he would not make such a disclosure or use of this information' plainly relates to performance of the Agreement."[54] According to Defendants, failure to comply with that representation would only be breach of the Agreement and merit contractual remedies and thus not constitute an independent tort.

"The economic loss rule is a judicially created doctrine which bars a tort action where a defendant has not committed a breach of duty apart from a breach of contract.[55] The economic loss rule bars a plaintiff from bringing tort claims to recover purely economic damages from a breach of contract absent personal injury or property damages.[56]

---

[52] Fla. Stat. 688.001 *et seq.*

[53] *See,* Idemn. Ins. Co. of N.A. v. Am. Aviation, Inc., 891 So.2d 532, 536 (Fla. 2004).

[54]Doc. 2, ¶ 24.

[55] Idemn. Ins. Co. of N.A. , 891 So. 2d at 537.

[56] AFM Corp. v. Southern Bell Telephone & Telegraph Co., 515 So. 2d 180, 180 (Fla. 1987).

The problem with Defendants argument is that they have incorrectly characterized the substance of Plaintiff's claim as one for misrepresentation relating to the performance of the duties under the contract rather than a claim for fraudulent inducement.

A review of the complaint discloses that the claim in Count II is indeed one for fraudulent inducement and not a claim for fraud in the performance of the contract. Specifically, Plaintiff alleges that Fenton fraudulently concealed the fact that he was a competitor of NLI, who had been attempting to develop a cold gas airbag inflation system, before entering into the Agreement.[57] Plaintiff claims that it would not have disclosed its proprietary information to Fenton had it known Fenton was a competitor. Additionally, Plaintiff alleges that Fenton never intended to keep his promise not to use or disclose the proprietary information.[58] Under Florida law, "a promise is actionable as fraud ... when the promisor had a positive intent not to perform his promise, or made the promise without a present intent to perform."[59] Thus, under either theory Plaintiff's claim alleges a valid cause of action for fraudulent inducement and a breach of duty separate from the duties imposed by the Agreement.

---

[57] Doc. 2, ¶¶ 8, 24.

[58] Doc. 2, ¶24.

[59] Wynfield Inns v Edward Le Roux Group, Inc., 896 F.2d 483, 490-91 (11th Cir. 1990).

The Florida Supreme Court has recognized in its economic loss rule jurisprudence that fraud in the inducement is a recognized exception to the economic loss rule.[60] This exception was also recognized by the Florida Supreme Court in *Indem. Ins. Co. of N.A.,* the case favorably cited by Defendants in support of their argument that the claim should be barred by the economic loss rule. There, the Florida Supreme Court declined to apply the economic loss rule to bar a cause of action for professional neglect.[61] The court reasoned that "the rule was primarily intended to limit actions in the product liability context." Moreover, the court noted that intentional torts, such as fraud, that require an additional element of "intent" would remain separate from a contract action and are not barred by the economic loss rule.[62] Thus, where the claim, as here, alleges an intentional tort such as fraud the claim is viewed as separate from the contract action. The mere fact that the damages sought in both counts are similar has no bearing on the separateness of the two claims.[63]

Accordingly, because Plaintiff's claim as alleged in Count II of the Complaint is one for the separate tort of fraudulent inducement it is not barred by the economic loss rule and therefore Defendants' argument is without merit.

Defendants alternatively argue that even if the fraudulent inducement claim is not barred by the economic loss rule, it is still subject to dismissal because it is preempted

---

[60] HTP, Ltd. v. Lineas Areas Costarricenses, S.A., 685 So. 2d 1238, 1239 (Fla. 1996); Moransais v. Heathman, 744 So.2d 973, 981 (Fal. 1999).

[61] Idemn. Ins. Co. of N.A. , 891 So. 2d at 542.

[62] *Id.* at 542-43.

[63] Bradley Factor, Inc. v. U.S., 86 F. Supp. 2d 1140, 1144-46 (M.D. Fla. 2000).

by FUTSA.  According to Defendants, Plaintiff's claim for fraudulent inducement is identical to Plaintiff's claim for misappropriation of a trade secret and essentially is nothing more than an attempt to tack additional causes of action on to a trade secret misappropriation claim in order to avoid the reach of FUTSA.

By its own provisions FUTSA forecloses other tort actions or remedies. FUTSA states in relevant part that it "displace[s] conflicting tort, restitutory, and other law[s] of this state providing civil remedies for misappropriation of a trade secret."[64] Thus, as a general proposition other torts involving the same underlying factual allegations as a claim for trade secret misappropriation will be preempted by FUTSA.[65] In order to pursue claims for additional tort causes of action where there are claims for misappropriation of a trade secret, there must be material distinctions between the allegations comprising the additional torts and the allegations supporting the FUTSA claim.[66]

Therefore, the question the Court must resolve is whether the fraudulent inducement claim as alleged in Count II and the misappropriation of trade secret claim are factually distinct. The Court concludes that the claims, as pled, are distinct. The crux of Plaintiff's fraud in the inducement claim is that Fenton misled Plaintiff into believing that NLI's technology was being evaluated by an independent industry expert, rather than by a potential competitor, in order to obtain access to Plaintiff's confidential

---

[64] Fla. Stat. § 688.008(1).

[65] Am. Honda Motor Co. v. Motorcycle Info. Network, Inc., 390 F.Supp. 2d 1170, 1180-81 (M.D. Fla. 2005) (where "the allegations of trade secret misappropriation alone comprise the underlying wrong, only the FUTSA claim will survive the motion to dismiss.").

[66] Allegiance Healthcare Corp. v. Coleman, 232 F. Supp. 2d 1329, 1335-36 (S.D. Fla. 2002).

proprietary information. In contrast, the gist of Plaintiff's misappropriation of trade secret claim under FUTSA is that Defendants disclosed the unlawfully obtained trade secrets to others in the airbag industry and utilized the information to compete with Plaintiff.

The Court therefore concludes that there are material differences between the fraudulent inducement claim and the FUTSA claim. Accordingly,  Count II of the Complaint is not preempted by FUTSA and as such Defendant's motion to dismiss Count II of the Complaint is due to be denied.

### 3.  Claim For Misappropriation of Trade Secret

Defendants request dismissal of count III of Plaintiff's complaint on the grounds that Plaintiff has failed to allege a claim for trade secret misappropriation because NLI has failed to allege what trade secrets were used or disclosed. Additionally, Defendants argue that Plaintiff's claim for misappropriation of a trade secret is barred by the economic loss rule.

As an initial argument Defendants contend that the disclosure of the actual trade secret in the pleading is crucial to stating a claim[67] and that because Plaintiff has failed to "identify what part of the alleged trade secret it is accusing Fenton of using or disclosing, or how he used or disclosed it," Count III of the Complaint should be dismissed.

A review of the Complaint discloses that contrary to Defendant's argument, Plaintiff has sufficiently identified the trade secret, which allegedly was misappropriated. In paragraphs 9 and 10 of the Complaint Plaintiff describes its proprietary airbag

---

[67]  Del Monte Fresh Produce Co. v. Dole Food Co., 136 F. Supp. 2d 1271, 1291 (S.D. Fla. 2001); Lovell Farms, Inc. v. Levy, 641 So. 2d 103, 104-5 (Fla. Dist. Ct. App. 1994).

inflation system as one which uses a micro-detonator with a scored diaphragm to open a helium filled, high pressure vessel, thereby inflating the airbag with helium. Plaintiff states in the Complaint that this technology causes the canister holding the cold gas under pressure to open and deploy in the milliseconds required to properly fill the airbag. The Court therefore concludes that Plaintiff has more than adequately identified the trade secrets it alleges were stolen.

Alternatively, Defendants contend that because the alleged misappropriation arises from the Agreement, that the FUTSA claim is barred by the economic loss rule. Defendants argue that the economic loss rule bars Plaintiff from bringing a claim for misappropriation of a trade secret because that claim is indistinguishable from the breach of contract claim. In short, Defendants contend if any trade secrets were disclosed the obligation not to disclose the information was solely within the terms and scope of the Agreement and as such must be pursued through contractual remedies.

Defendant's argument is misplaced because it is not supported by Florida law. The Florida Supreme Court has unequivocally held that the economic loss rule does not bar statutory causes of action. [68] The reason for this rule is that "'[C]ourts do not have the right to limit and, in essence, to abrogate ... the expanded remedies granted ... under [a] legislatively created scheme by allowing the judicially favored economic loss rule to override a legislative policy pronouncement and to eliminate the enforcement of those remedies.'"[69]  While there are no reported Florida cases specifically dealing with

---

[68] Computech Int'l. v. Milam Commerce Park, Ltd., 753 So. 2d 1219, 1222 (Fla. 1999).

[69] Id (quoting Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc., 693 So. 2d 602, 609 (Fla. Dist. Ct. App. 1997).

the application of the economic loss rule in a claim under FUTSA, in all other contexts involving statutory claims, Florida courts have consistently held that statutory causes of action are not limited by the economic loss rule.[70]

Accordingly, because the economic loss does not limit the right to maintain statutory causes of action, Defendants' motion to dismiss Count III of the Complaint is due to be denied.

### 4. Claim For Civil Theft

Without citation to any supporting case law, Defendants argue that Plaintiff has failed to state a claim for civil theft in Count IV of the Complaint because Florida's civil theft statute, Fla. Stat. §772.11, does not apply to the allegations in the Complaint. According to Defendants, the legislature did not include in the civil theft statute the specific crime of "trade secret, thefts and embezzlement"[71] in the list of enumerated crimes for which a civil remedy applies. Thus, Defendants contend the theft of a trade secret is not an enumerated crime for which the legislature has provided a civil remedy. In the absence of such, Defendants surmise, there is no claim under the statute.

A review of the history of the civil theft statute discloses that prior to its amendment in 1999, § 772.11 included § 812.081 as an enumerated crime for which a

---

[70] *See, e.g.* Delgado, 693 So. 2d 602, 609 (Fla. Dist. Ct. App. 1997)(economic loss rule does not limit claims under the Florida Deceptive And Unfair Trade Practices Act ("FDUPTA"); Stallings v. Kennedy Electric, Inc., 710 So.2d 195 (Fla. Dist. Ct. App. 1998)(economic loss rule does not limit claims under Fla. Stat. § 553.84).

[71] Fla. Stat. § 812.081.

civil remedy applied.[72]  The current version of § 772.11 - which is applicable to this case - now includes in the list of enumerated crimes "any violation of §§. 812.012-812.037 or § 825.103(1)"  but it does not expressly list § 812.081, as one of the enumerated crimes.[73]

Plaintiff correctly points out that although §812.081 is not included in the current version of the statute, the enumerated list of crimes for which a civil remedy applies still lists the general theft statute, § 812.014. Section 812.014 applies whenever a person "knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently...[d]eprive the other person of a right to the property or a benefit form the property [or] [a]ppropriate the property to his or her own use or to the use of any person not entitled to the use of the property."[74] Thus, while the civil theft statute might not include a specific listing for theft of trade secrets, it nonetheless continues to include the broader listing for crimes committed under the general theft statute.

Moreover, there are a number of Florida cases both before and after the amendment, which have all consistently recognized that there is a cause of action for civil theft of trade secrets under Florida law.[75] Lastly, well after the amendment of the

---

[72] Fla. Stat. § 772.11 (1988).

[73] *Id*.

[74] Fla. Stat. § 812.014(1)(a)-(b).

[75] *See, e.g.* Florida Power and Light Co. V. Utilities Services of America, Inc., 550 So.2d 13, 14 (Fla. Dist. Ct. App. 1989)(affirming judgment entered on jury verdict for civil theft of trade secret); Information Technology & Engineering Corp., v. Reno, 813 So.2d 1053 (Fla. Dist. Ct. App. 2002)(referring suit for civil theft of trade secrets to arbitration); Future Tech International, Inc. V. Tae ZI Meida, Ltd. et al., 944 F.Supp. 1538, 1569 (S.D. Fla. 1996)(holding that claim for civil theft of trade secrets is not barred by the
(continued…)

civil theft statute the Florida Supreme Court approved the 2005 Jury Instructions for the general theft statute, which expressly instructed juries regarding how to ascertain the "value" of trade secrets for purposes of the general theft statute.[76]

Accordingly, for these reasons, the Court concludes that Plaintiff has stated a claim for civil theft in Count IV of the Complaint and therefore Defendants' motion to dismiss Count IV is due to be denied.

### 5. Unjust Enrichment

Defendants move to dismiss the unjust enrichment claim in Count V of the Complaint on the grounds that it is preempted by FUTSA. In its opposing memorandum Plaintiff states that "It appears that Count V's claim for unjust enrichment is in fact preempted by FUTSA."[77] The Court agrees. Because FUTSA expressly authorizes a plaintiff to recover the "unjust enrichment caused by misappropriation"[78] a claim for unjust enrichment is indistinguishable from the remedy under the statute and therefore is preempted. Consequently, count V of the Complaint for unjust enrichment is due to be dismissed.

### 6. Assignment of Patents

Defendants contend that count VI of the Complaint should be dismissed because Florida law does not provide a cause of action for "Assignment of Patents." Further,

---

[75](...continued)
economic loss rule).

[76] *In Re Standard Jury Instructions in Criminal Cases* (No. 2004-1), 915 So. 2d 609, 612 (Fla. 2005).

[77] Doc. 15, p. 14, n. 4.

[78] Fla. Stat. § 688.004.

25

Defendants argue that if Plaintiff is really requesting the Court to impose a constructive

trust, Plaintiff cannot pursue the equitable remedy of imposition of a constructive trust

because Plaintiff has an adequate remedy at law, and in any event, a constructive trust

is merely a remedy and not a cause of action and should not be included separately in a

count of the Complaint.

While Defendants are correct that the equitable remedy of imposition of a

constructive trust normally is not available where there exists adequate remedies at

law,[79] the request for an assignment of patents is an entirely different remedy from the

equitable remedy of constructive trust. In cases involving the theft of intellectual

property rights, such as trade secrets, a number of courts have ordered as a remedy an

assignment of patents to the party from who confidential information was

misappropriated when the other party secured a patent based upon unlawfully obtained

confidential information.[80]

Therefore, while the claim for assignment of patents might better be

characterized as an available remedy in a trade secret theft case, the Court does not

conclude that this is a sufficient reason to dismiss the claim as a stand alone count in

the Complaint. Accordingly, Defendants' motion to dismiss Count VI of the Complaint is

due to be denied.

---

[79] CSC Holdings, inc. v. Kimtron, Inc., 47 F. Supp. 2d 1361, 1365 (S.D. Fla. 1999) (dismissing constructive trust claim because statutes provided legal remedy of damages).

[80] Richardson v. Suzuki Motor Co. Ltd., 868 F. 2d 1226, 1249-50 (Fed. Cir. 1989), *cert. denied*, 493 U.S. 853 (1989); Saco-Lowell Shops v. Reynolds, 141 F.2d 587, 598 (4th Cir. 1944) (requiring assignment of patent that was based on ideas received in confidence for invention development by licensee from licensor); Taborski v. State, 659 So. 2d 1112, 1115-16 (Fla. Dist. Ct. App. 1995), *rev. denied*, 666 So. 2d 145 (Fla. 1995).

D.    **Motion For More Definite Statement**

Lastly, Defendants alternatively request that in the event the Court does not dismiss Plaintiff's Complaint, that the Plaintiff be required to file a more definite statement.

Rule 12(e) of the Federal Rules of Civil Procedure allows a party to move for a more definite statement before responding to the pleading when that pleading "is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading[.]"[81] The motion "attacks unintelligibility in a pleading, not simply mere lack of detail."[82]

Suffice it to say, that the Complaint sufficiently advises the Defendants of the substance and the nature of the claims in each of the counts. Because the Federal Rules of Civil Procedure provide for notice pleading it is the general view that "[m]otions for more definite statement are disfavored in light of the liberal discovery practices."[83] Therefore, to the extent that the Defendants need to obtain additional information to defend themselves at trial discovery is the avenue to pursue, and not a motion for a more definite statement.[84] Accordingly, the Defendants' alternative request for a more definite statement is also due to be denied.

---

[81] Davison v. Santa Barbara High School District, 48 F. Supp 2d 1225, 1228 (C.D. Cal. 1998)

[82] Id. at 1228

[83] Bazal v. Belford Trucking Company, 442 F.Supp. 1089 (S.D. Fla. 1977).

[84] Erickson v. Hunter, 932 F.Supp. 1380, 1384 (M.D. Fla. 1996).

27

### IV.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that Count V of

Plaintiff's Complaint should be **DISMISSED** but that in all other respects Defendants'

Motion To Dismiss, Or Alternatively, For A More Definite Statement (Doc. 5) is due to be

**DENIED.**

**IN CHAMBERS** in Ocala, Florida, on February 23, 2007.

GARY R. JONES
United States Magistrate Judge

Copies to:

The Honorable Wm. Terrell Hodges
Senior United States District Judge

Counsel of Record